UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN ALLEN ALEXANDER, #182285,

               Petitioner,

                                    Case No. 15-cv-11364

v.                                   Hon. Matthew F. Leitman

BONITA HOFFNER,

               Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF #1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO *PROCEED IN FORMA PAUPERIS* ON APPEAL

Petitioner John Allen Alexander is a state prisoner in the custody of the

Michigan Department of Corrections. On April 13, 2015, Alexander filed a petition

for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* ECF #1.)

In that petition, Alexander challenges his state-court convictions of second-degree

fleeing and eluding a police officer, Mich. Comp. Laws § 257.602a(4)(b), and

resisting or obstructing a police officer, Mich. Comp. Laws § 750.81d(1). Following

a jury trial in the Wayne County Circuit Court, the state trial court sentenced

Alexander as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent

terms of life imprisonment and 5 to 15 years imprisonment.

In his original and supplemental pleadings, Alexander raises claims concerning an upward sentencing departure, the admission of certain impeachment evidence, the sufficiency of the evidence, the conduct of the prosecutor, his right to a speedy trial, the accuracy of the pre-sentence information report, his habitual offender sentencing enhancement, the effectiveness of trial and appellate counsel, a Friend of the Court warrant and pre-trial bail, double jeopardy, the charging decision, and the scoring of his sentencing guidelines. (*See* ECF ## 1, 11.)

The Court has reviewed Alexander's submissions and concludes that his claims are without merit. Therefore, the Court **DENIES** the petition. The Court will also deny Alexander a certificate of appealability, but it will grant him permission to appeal *in forma pauperis*.

## I

Alexander's convictions arose from his conduct in fleeing a Wayne State University Police Officer in Detroit, Michigan on January 19, 2011. The Court adopts Respondent's summary of the trial testimony, to the extent that it is consistent with the record. Those facts are as follows:

> Wayne State University Police Officer Ryan Spangler was on duty and in uniform in the early morning hours of January 19, 2011 when he pulled up behind a Plymouth Breeze in his marked squad car. (8/8/11 Trial Tr. at 78-79.) There were no other cars or people around. (8/8/11 Trial Tr. at 83.) The Breeze ran a stop sign, so Officer

Spangler activated his lights to initiate a traffic stop. (8/8/11 Trial Tr. at 80.)  As he did so, the Breeze accelerated.  (8/8/11 Trial Tr. at 80.)  The Breeze was approximately 50 to 75 feet away at that time.  (8/8/11 Trial Tr. at 80.)  Officer Spangler then activated his sirens. (8/8/11 Trial Tr. at 80.)

The Breeze continued to flee from Officer Spangler, even running a red light in the process.  (8/8/11 Trial Tr. at 81.) Officer Spangler ran the Breeze's license plates and discovered the vehicle was stolen.  (8/8/11 Trial Tr. at 81.) After the Breeze turned onto another street, it slowed down and the passenger jumped out of the vehicle, running north.  (8/8/11 Trial Tr. at 82.)

Seconds later, the driver—later identified as Alexander— also jumped out of the car while it was still moving. (8/8/11 Trial Tr. at 82.)  The Breeze crashed into another car while Alexander ran south.  (8/8/11 Trial Tr. at 82.) Officer Spangler chased Alexander on foot for approximately one block.  (8/8/11 Trial Tr. at 82.)  He had Alexander in his sights almost the entire time, save for when Alexander turned a corner.  (8/8/11 Trial Tr. at 83.) When Officer Spangler turned the same corner, he saw Alexander attempting to hide amongst some bushes. (8/8/11 Trial Tr. at 83.)  Officer Spangler then arrested him.  (8/8/11 Trial Tr. at 83.)

Another officer arrived on the scene and searched Alexander, finding a screwdriver in his right sleeve. (8/8/11 Trial Tr. at 84.)  Officer Spangler went back to the Breeze and noticed that the ignition had been punched out with a screwdriver.  (8/8/11 Trial Tr. at 84.)

The parties also stipulated that Alexander was twice previously convicted of fleeing and eluding.  (8/8/11 Trial Tr. at 104.)

Alexander testified that Officer Spangler had the wrong guy.  (8/8/11 Trial Tr. at 120.)  He stated that the previous

night he had gone over to a friend's house to drink and get high on crack cocaine. (8/8/11 Trial Tr. at 110-11.) He then walked to his friend Gwendolyn's house where he watched TV until the early morning. (8/8/11 Trial Tr. at 112.) He left her house around 4 a.m. and ended up passing out face-down in the snow by the bushes where Officer Spangler eventually found him. (8/8/11 Trial Tr. at 114-16.) He claimed he carried the screwdriver for protection because, as a parolee, he was not allowed to carry any actual weapons. (8/8/11 Trial Tr. at 117.)

On cross-examination, Alexander admitted that he lies to escape trouble, including using numerous aliases. (8/8/11 Trial Tr. at 128-29, 134.) He also admitted that he had been twice convicted of receiving and concealing a stolen motor vehicle. (8/8/11 Trial Tr. at 133.)

(Resp. Ans., ECF #7 at Pg. ID 131-34.)

Following Alexander's convictions and sentencing, he filed an appeal of right with the Michigan Court of Appeals raising claims concerning the trial court's upward sentencing departure, his impeachment with two prior convictions for receiving and concealing stolen property, the sufficiency of the evidence to support his convictions, prosecutorial misconduct for eliciting testimony that the vehicle was stolen and evidence of his use of aliases, birth dates, and social security numbers, ineffective assistance of trial counsel for failing to object to testimony about the vehicle and his possession of a screwdriver upon his arrest, and a violation of his speedy trial rights. (*See* ECF #8-14.) The Michigan Court of Appeals denied relief on those claims and affirmed Alexander's convictions. *See People v. Alexander*, 2012 WL 6215272 (Mich. Ct. App. Dec. 13, 2012). Alexander then filed an

application for leave to appeal with the Michigan Supreme Court, and that court denied leave. *See People v. Alexander*, 832 N.W.2d 749 (Mich. 2013).

After Alexander exhausted his direct appeals, he filed a motion to dismiss and a motion for relief from judgment with the state trial court. In these filings, Alexander raised claims related to (1) inaccurate information in his pre-sentence report, (2) his right to challenge his fourth habitual offender sentencing enhancement, (3) ineffective assistance of trial counsel for (a) failing to investigate a Friend of the Court warrant, (b) failing to object to the pre-sentence information report, and (c) agreeing to a preliminary examination stipulation without his consent, (4) ineffective assistance of appellate counsel for (a) failing to raise the foregoing issues on direct appeal and (b) failing to challenge a late appellate filing by the prosecution, (5) prosecutorial misconduct for issuing an invalid Friend of the Court warrant causing a denial of bail, (6) double jeopardy, and (7) a charging decision error due to a defective indictment. (*See* ECF ## 8-16, 8-17.) The state trial court denied relief on those claims and held that Alexander was not entitled to relief because he had failed to establish either good cause for failing to raise his claims on direct appeal or in a prior motion or actual prejudice under Michigan Court Rule 6.508(D)(3). (*See* ECF #8-18.) Alexander filed a delayed application for leave to appeal the state trial court's decision with the Michigan Court of Appeals, and the state appellate court denied leave. (*See* ECF #8-19.) Alexander then filed an

application for leave to appeal with the Michigan Supreme Court, and that court denied leave pursuant to Michigan Court Rule 6.508(D). *See People v. Alexander*, 861 N.W.2d 2 (Mich. 2015).

On April 13, 2015, Alexander filed his initial federal habeas petition raising most of the claims presented to the state courts on direct appeal and collateral review of his convictions. (*See* ECF #1.) Respondent filed an answer to the petition on January 8, 2016. (*See* ECF #7.) She contended that the Court should dismiss the petition because Alexander's claims were procedurally defaulted, not cognizable, and/or lack merit. (*See id.*)

While Alexander's petition was pending in this Court, he filed a second motion for relief from judgment with the state trial court seeking a remand on a sentencing claim under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). (*See* ECF #8-21.) In *Lockridge*, the Michigan Supreme Court held that "[a] straightforward application of the language and holding" in the United States Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), compelled the conclusion that the mandatory Michigan sentencing guideline scheme in place at the time of Alexander's sentencing "violate[d] the Sixth Amendment" because it "allow[ed] judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment a defendant receives." *Lockridge*, 870 N.W.2d at 513-14, 524. The state trial court denied the motion

pursuant to Michigan Court Rule 6.502(G)(2). (*See* ECF #17-3.) It held that *Lockridge* was not retroactively applicable to Alexander's case. (*See id.*) Alexander then filed a motion for reconsideration, which the state trial court denied on January 26, 2016. (*See* ECF #17-4.) Alexander filed a delayed application for leave to appeal that decision and a motion for summary judgment with the Michigan Court of Appeals, and the state appellate court denied both the application and motion. (*See* ECF ## 17-5, 17-6.) Alexander then filed an application for leave to appeal with the Michigan Supreme Court, which that court denied pursuant to Michigan Court Rule 6.502(G). *See People v. Alexander*, 888 N.W.2d 80 (Mich. 2016). Finally, Alexander filed a motion for reconsideration with the Michigan Supreme Court, and that court denied the motion. *See People v. Alexander*, 500 Mich. 963, 892 N.W.2d 364 (2017).

After Alexander exhausted his state court appeals with respect to his second motion for relief from judgment, he filed an amended federal habeas petition in this Court supplementing his original petition with claims challenging the scoring of his sentencing guidelines and asserting that the state trial court sentenced him in violation of his Sixth Amendment rights under *Lockridge* and related federal law. (*See* ECF #11.) Respondent filed an answer to the amended petition contending that the claims are not cognizable, barred by procedural default, barred by the non-retroactivity doctrine, and/or lack merit. (*See* ECF #16.)

### III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

**IV**

The Court first turns to the claims in Alexander's habeas petition that he raised on direct appeal. The Court has carefully reviewed these claims and concludes that they are without merit.[1]

**A**

Alexander first asserts that he is entitled to federal habeas relief because the trial court erred when it (1) departed above the minimum sentencing guidelines range, failed to provide substantial and compelling reasons for that decision, and failed to rely upon objective and verifiable factors when it issued his sentence and (2) issued him a disproportionate life sentence. The Michigan Court of Appeals considered these claims on direct review and rejected them:

> The trial court noted defendant's extensive and recidivistic criminal history, which began in 1978 and continued unabated. Defendant was aged 45 at sentencing and had incurred 13 prior felony convictions and one misdemeanor conviction. He also had a history of substance abuse. The court noted that defendant had reached habitual-offender-fourth status in 1991, "20 years ago, yet has continued his nefarious career as a habitual offender for another 20 years." The court emphasized several times how quickly defendant committed new crimes after being placed on parole. In one instance, the court noted, defendant had lasted only 39 days before being charged with a new

---

[1] The Court notes that Alexander's list of his habeas claims varies between his form petition and his memorandum in support of his petition. Respondent relies on the list contained in the memorandum. For consistency and to minimize confusion, the Court does the same.

felony, and in another instance he was on parole for 10 months before he committed his next felony. Finally, summing up defendant's criminal history, the court remarked that the crimes at issue in this case were committed only two months after defendant had been paroled for his most recent prior conviction.

The trial court also noted that the instant crimes made defendant, in reality, an habitual offender, *thirteenth* offense, rather than fourth. The court clearly stated that defendant's extensive criminal history made him the exact type of "candidate" envisioned by the Legislature when it provided for a sentence of parolable life under the habitual-offender-fourth statute. We find that the trial court sufficiently articulated a substantial and compelling reason to justify its guidelines departure and to enable this Court to undertake an effective appellate review. *Id.* at 259–260. The fact that defendant had reached habitual-offender-fourth status 20 years earlier and was now, in actuality, convicted of his thirteenth felony, was not taken into account in determining the appropriate sentence range and had not been given adequate or proportionate weight in the guidelines recommendation.

The trial court's reasons for departure were objective and verifiable, because they were based on defendant's extensive criminal history and were capable of being confirmed. *People v. Horn,* 279 Mich.App 31, 43 n 6; 755 NW2d 212 (2008). The trial court's statement concerning the legislative intent behind the habitual-offender-fourth "parolable life" sentence, and how far beyond his fourth offense defendant had gone, clearly explained why the departure was more proportionate than the sentencing guidelines recommendation. *People v. Smith,* 482 Mich. 292, 304; 754 NW2d 284 (2008). The court's reiteration of defendant's extensive criminal history of recurring and escalating acts demonstrated his dangerousness. Defendant's sentences were proportionate to the seriousness of his conduct and prior criminal history. *Id.* at 300, 305. Giving the deference that is due to the trial

> court, *Babcock,* 469 Mich. at 270, we find that the trial court identified substantial and compelling reasons based on objective and verifiable facts to depart from the guidelines, did not make any factual errors, and did not abuse its discretion.

*Alexander*, 2012 WL 6215272, at ** 1-2.

Alexander has failed to establish that the state appellate court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. His challenge to the state trial court's upward departure from the recommended minimum sentence guidelines range and his insistence that the state court did not comply with requirements under Michigan law when it issued his sentence are state-law claims that are not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (noting that a federal court "may not issue the writ [of habeas corpus] on the basis of a perceived error of state law"). Simply put, "[a] state court's alleged misinterpretation of state sentencing guidelines … is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state-law issue not cognizable on federal habeas review). Accordingly, any alleged error by the state

trial court departing from the recommended minimum guidelines range does not merit federal habeas relief.[1]

Nor has Alexander established that the Michigan Court of Appeals acted contrary to, or unreasonably applied, clearly-established federal law when it concluded that his sentences were proportional to the seriousness of his offenses and his history of criminal conduct. Alexander has not cited any United States Supreme Court case that suggests, much less holds, that his sentence here was so disproportional as to amount to an Eighth Amendment violation. Moreover (and in any event), Alexander has not shown that his sentence here was disproportional. As noted above, Alexander has a lengthy criminal history, the crimes at issue were serious, and the trial court's sentences are within the statutory maxima. For all of these reasons, Alexander has thus failed to establish that he is entitled to federal habeas relief on this claim.

---

[1] The Court further notes that Alexander's sentences are within the statutory maximum sentences for second-degree fleeing and eluding and resisting and obstructing a police officer for a fourth habitual offender under Michigan law. *See* Mich. Comp. Laws §§ 257.602a(4) (authorizing a sentence of 10 years imprisonment); 750.81d(1) (authorizing a sentence of 2 years imprisonment), and 769.12 (authorizing a sentence of life or a lesser term for a fourth habitual offender where the subsequent felony is punishable by a maximum term of five years or more or life and authorizing a sentence of up to 15 years imprisonment for a fourth habitual offender where the subsequent felony is punishable by less than 5 years imprisonment).

**B**

Alexander next asserts that he is entitled to federal habeas relief because the state trial court erred when it allowed the prosecution to impeach him with two prior convictions for receiving and concealing stolen property and with his use of aliases and multiple birth dates and social security numbers. The Michigan Court of Appeals considered this claim on direct appeal and rejected it:

> Defendant was impeached with his 2003 and 2007 convictions for receiving and concealing stolen property. These crimes contained elements of theft and were punishable by imprisonment in excess of one year. See *People v. Johnson,* 474 Mich. 96, 103; 712 NW2d 703 (2006), and MRE 609(a)(2)(A). Both occurred within the 10–year time limit required by MRE 609(c). They were not similar to the remaining charges against defendant. See MRE 609(b). Moreover, the court made the determination that the probative value of the evidence outweighed the prejudicial effect. The court found that defendant's credibility was "paramount" to the issue and that the evidence was not "unduly prejudicial under MRE 403." In its determination of prejudice, the trial court needed to consider only "the similarity to the charged offense and the importance of the defendant's testimony to the decisional process...." *Allen,* 429 Mich. at 606. The record reveals that the court's ruling did not deter defendant from testifying. *Meshell,* 265 Mich.App at 636. Finally, the court gave a limiting instruction to the jury.

> We find that the trial court did not abuse its discretion in permitting impeachment of defendant with his prior convictions. We find no merit to defendant's contention that the trial court erroneously "created a new standard" under MRE 403 when it found that the evidence was not "unduly prejudicial." MRE 609(a)(2)(B) requires the court to determine whether "the probative value of the evidence

> outweighs its prejudicial effect." The court's "unduly
> prejudicial" statement did not create a new standard; the
> court was simply paraphrasing the applicable standard.
> Defendant also takes issue with impeachment evidence
> consisting of aliases, different birth dates, and different
> social security numbers allegedly used by him. However,
> under the circumstances here, where defendant admitted
> to lying and implied, in his answers to the prosecutor, that
> his use of false identifying information was for the purpose
> of escaping trouble, the trial court cannot be deemed to
> have abused its discretion in admitting the evidence. See,
> e.g., *People v. Thompson,* 101 Mich.App 609, 614; 300
> NW2d 645 (1980), and *People v. Messenger,* 221
> Mich.App 171, 180; 561 NW2d 463 (1997).

*Alexander*, 2012 WL 6215272, at ** 2-3.

Alexander has failed to establish that the state appellate court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. First, the errors Alexander has identified are errors of state evidentiary law, and, as noted above, "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67. This claim is therefore not cognizable on federal habeas review. *See Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Second, Alexander not shown that that the trial court's evidentiary rulings were "so egregious" that they violated his federal due process rights. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (explaining that only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate federal due process rights and warrant federal habeas relief). Nor has he cited any clearly-established federal law that could establish that the admission of the

identified impeachment evidence violated his constitutional rights or rendered his trial fundamentally unfair. *See*, *e.g.*, *Givens v. Yukins*, 238 F.3d 420, 2000 WL 1828484, *7 (6th Cir. 2000) (stating that the Supreme Court has not addressed whether the admission of alias evidence may render a trial fundamentally unfair).[2] Alexander has therefore failed to establish a right to federal habeas relief on this claim.

## C

Alexander next maintains that he is entitled to federal habeas relief because the prosecution presented insufficient evidence to support his convictions for second-degree fleeing and eluding and resisting and obstructing a police officer. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant contends that there was insufficient evidence to establish the requisite element of identification to convict defendant of fleeing and eluding. *See* MCL 257.602a(1) and (4).
>
> [….]
>
> There was sufficient evidence to convict defendant of fleeing and eluding. The jury was presented with two opposing theories and chose to believe the prosecution's

---

[2] The Court also notes that any potential prejudice to Alexander from the admission of the identified impeachment evidence was mitigated, in part, by the fact that the trial court gave a limiting instruction on the proper use of the prior conviction evidence. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").

theory, presented through the testimony of the police officer. Although there were discrepancies in the officer's description of defendant's clothing, these were matters for the jury to resolve. *People v. Davis,* 241 Mich.App 697, 700; 617 NW2d 381 (2000). The jury found the police officer's identification of defendant credible, and, again, this Court will not interfere with the jury's role of determining the credibility of the witnesses. *People v. Bulmer,* 256 Mich.App 33, 36; 662 NW2d 117 (2003). A rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

[….]

To establish the offense of resisting and obstructing a police officer, the prosecution was required to prove that: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v. Corr,* 287 Mich.App 499, 503; 788 NW2d 860 (2010). Failure to obey a police officer's order to stop, flight or attempted flight from the scene that actively interferes with a stop and investigation, and wrestling with a police officer amount to conduct constituting resisting and obstructing a police officer. See, generally, *People v. Nichols,* 262 Mich.App 408, 411–413; 686 NW2d 502 (2004); see also *People v. Wess,* 235 Mich.App 241, 242, 247; 597 NW2d 215 (1999), and *People v. Pohl,* 207 Mich.App 332, 333; 523 NW2d 634 (1994) (analyzing the analogous statute of MCL 750.479). Here, the fact that defendant fled from the scene and interfered with the officer's attempted stop and investigation was sufficient to establish the first prong of the crime.

The word "obstruct" in the statute "includes ... a knowing failure to comply with a lawful command." MCL 750.81 d(7)(a). In particular, the "has reason to know" language can be interpreted as "has reasonable cause to believe" and requires the fact-finder to analyze whether the facts indicate that when resisting, the defendant had "reasonable cause to believe" the officer was performing his or her duties. *Nichols,* 262 Mich.App at 414. The "prosecution could sustain its burden by proving defendant constructive, implied, or imputed knowledge, or by using the record evidence to show that a defendant should have had knowledge on the basis of the facts and circumstances of the case." *Id.*

The police officer testified that he was dressed in his police uniform, driving a marked police vehicle, and activated his lights; when the targeted vehicle sped up, the officer activated his siren, and the vehicle sped up even more. Then, the vehicle slowed a bit and the passenger jumped out; it slowed a bit more and the driver jumped out while the vehicle was still running, and the vehicle crashed into a parked vehicle. The officer chased the driver, lost sight of him for a few seconds as he turned a corner, and then found defendant hiding behind some bushes. The jury determines the credibility of each witness and what weight to give that testimony, and the reviewing court should not disrupt that role. *Wolfe,* 440 Mich. at 514–515. Viewed in the light most favorable to the prosecutor, the officer's testimony was sufficient to create a reasonable inference that defendant had "reasonable cause to believe" that the person chasing him was a police officer performing an investigation and that defendant hindered him. See *Nichols,* 262 Mich.App at 414, and *Pohl,* 207 Mich.App at 333. Thus, all the essential elements of the crime were proven beyond a reasonable doubt.

*Alexander*, 2012 WL 6215272, at ** 3-4.

Alexander has failed to establish that the state appellate court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. Nor did it rest on an unreasonable determination of the facts. The question before the Michigan appellate courts on Alexander's sufficiency-of-the-evidence claim was "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). But, on habeas review under AEPDA, this claim must survive "two layers" of deference:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.

*Coleman v. Johnson*, 556 U.S. 650, 651 (2012). *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (noting that when analyzing a *Jackson* claim on habeas review, reviewing court "cannot even inquire whether any rational trier of fact would conclude that petitioner [] is guilty of the offenses with which he was charged. Instead, [the reviewing court] must determine whether the [state] Court of Appeals

itself was unreasonable in its conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial").

Here, the Michigan Court of Appeals did not unreasonably conclude that a rational trier of fact could have agreed with the jury's guilty verdict. At trial, Officer Spangler testified that he was in his uniform driving a marked patrol car when he saw the target vehicle and activated his lights. The vehicle sped up. The officer activated his siren. The vehicle sped up even more. The vehicle eventually slowed and the passenger and then the driver jumped out and fled as the vehicle crashed into a parked car. Officer Spangler chased the driver, lost sight of him for a few seconds as he rounded a corner, and then found Alexander behind some nearby bushes. Officer Spangler identified Alexander as the person he chased and found in the bushes. The parties stipulated that Alexander had two prior convictions for fleeing and eluding the police. Such evidence was sufficient to establish that Alexander was the person who committed the crime, that he fled and eluded the officer, and that he resisted and obstructed the officer. And to the extent there were conflicts in the evidence, it was for the jury, not this Court, to resolve those conflicts. *See Jackson*, 443 U.S. at 326. For all of these reasons, the Michigan Court of Appeals' decision affirming the jury's verdict was not contrary to, nor an unreasonable application of,

clearly established federal law. Alexander is therefore not entitled to federal habeas relief on this claim.

## D

Alexander next claims that he is entitled to federal habeas relief because the prosecution engaged in misconduct when it impeached him with his receiving and concealing stolen property convictions and with his use of aliases and multiple birth dates and social security numbers. The Michigan Court of Appeals reviewed this claim on direct appeal and rejected it:

> Defendant further contends that the prosecutor's use of his aliases, birth dates, and social security numbers was unfairly prejudicial and not probative of any material fact at issue. However, the trial court held that this evidence was admissible, and thus the prosecutor was not acting in bad faith in attempting to elicit it. *See, e.g., People v. Dobek*, 274 Mich.App 58, 70; 732 NW2d 546 (2007) ("[a] prosecutor's good-faith effort to admit evidence does not constitute misconduct").

*Alexander*, 2012 WL 6215272, at *4.[3]

Alexander has failed to establish that the state appellate court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. Alexander has not identified any clearly-established federal law which holds that it

---

[3] It does not appear that Alexander raised the portion of this claim related to the prosecution's use of his previous convictions on direct appeal. However, even if the Court reviewed that claim *de novo*, it would still conclude that Alexander is not entitled to federal habeas relief on this claim for all of the reasons stated above.

is prosecutorial misconduct to introduce evidence that a trial court has held is admissible. Indeed, "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Alexander is therefore not entitled to federal habeas relief on this claim.

## E

Alexander next asserts that he is entitled to federal habeas relief because the state trial court erred when it denied his motion to dismiss based upon a perceived speedy trial violation. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> The United States and Michigan Constitutions guarantee criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, ¶ 20; *People v. Patton,* 285 Mich.App 229, 235 n 4; 775 NW2d 610 (2009). The relevant period for determining whether a defendant was denied a speedy trial begins on the date of the defendant's arrest, *id.* at 236, but a formal charge or restraint of the defendant is necessary to invoke the speedy-trial guarantees, *People v. Rosengren,* 159 Mich.App 492, 506 n 16; 407 NW2d 391 (1987).
>
> This Court reviews a defendant's claim of a speedy-trial violation by balancing the following four factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v. Williams,* 475 Mich. 245, 261–262; 716 NW2d 208 (2006). Where the delay is less than 18 months, the defendant bears the burden of showing prejudice, but the prosecutor has the burden to prove that the defendant was not prejudiced when the delay is more

than 18 months. See *id.* at 262. When considering the reasons for a delay, a court must determine the extent to which the prosecutor or the defendant caused the delay. *People v. Walker,* 276 Mich.App 528, 541–542; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich. 1059; 743 NW2d 914 (2008) and overruled in part on other grounds by *People v. Lown,* 488 Mich. 242; 794 NW2d 9 (2011). "Unexplained delays" and "[s]cheduling delays and docket congestion" are charged against the prosecutor. *Walker,* 276 Mich.App at 542. "However, [a]lthough delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v. Waclawski,* 286 Mich.App 634, 665–666; 780 NW2d 321 (2009) (internal citations and quotation marks omitted). "[T]here is no set number of days between a defendant's arrest and trial that is determinative of a speedy trial claim." *Id.* at 665. However, "[a] delay of six months is necessary to trigger an investigation into" a claim that a defendant has been denied a speedy trial. *Walker,* 276 Mich.App at 541.

In this case, trial was held six months and 20 days from defendant's arrest, sufficient to "trigger an investigation." *Id.* Fifteen days of the delay were attributable to defendant because defense counsel failed to appear. The delay by the court, two business days, was "inherent in the court system," because the court was scheduled to be in another location. The delay attributable to the prosecutor, because a prosecution witness was on furlough, was approximately 33 days. Although defendant asserted his right by filing a motion to dismiss based on an alleged speedy-trial violation, the delay was less than 18 months and therefore defendant bears the burden of showing prejudice. *Williams,* 475 Mich. at 262. Defendant has provided no information or statement to demonstrate any prejudice, other than the fact that he was incarcerated pending the trial. He has stated no claim of prejudice to his defense strategy. *Id.* at 264. He does not allege that any witness he

> intended to call to support his alibi, or any evidence, was
> lost because of the delay. Therefore, we conclude that
> defendant was not prejudiced by the short delay in his trial.
> The record demonstrates that defendant failed to establish
> a violation of his constitutional right to a speedy trial.

*Alexander*, 2012 WL 6215272, at *6.

First, to the extent that Alexander argues that the state trial court violated Michigan's state-law 180-day speedy-trial rule, that claim is not cognizable on federal habeas review because it is a question of state law, and "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67.

Second, to the extent that Alexander claims that the state trial court violated his federal speedy trial rights, the Michigan Court of Appeals' rejection of that claim was not contrary to, nor an unreasonable application of, clearly established federal law. The state appellate court applied the proper test under federal law. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). And Alexander has not shown how the Michigan Court of Appeals' application of that law was unreasonable or incorrect. Alexander is therefore not entitled to federal habeas relief on this claim.

## V

The Court now turns to the claims that Alexander raised in his first motion for relief from judgment that he filed in the state trial court. Respondent argues that the Court should not consider these claims – other than Alexander's ineffective assistance of appellate counsel claim – because they are procedurally defaulted.

However, because the underlying merits of Alexander's claims are easily resolved, the Court will consider them. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). *See also Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (proceeding directly to merits analysis because "the question of procedural default presents a complicated question . . . and is unnecessary to our disposition of the case").

## A

Alexander first asserts that he is entitled to federal habeas relief because he did not have enough time to review his pre-sentence information report and the report contains inaccurate information. The state trial court considered this claim and rejected it:

> Defendant first argues that he is entitled to be resentenced because his presentence investigation report (PSIR) contains inaccurate information. Defendant asserts that he was not given ample time to review the report with trial counsel before his sentencing hearing. However, even if defendant felt he did not have enough time to review the PSIR prior to the hearing, as defendant admits here, he was allowed to read along with defense counsel while the Court reviewed the PSIR on the record.

> First, the Court notes that defendant has failed to support his contention that the PSIR contained inaccurate information within any documentary support. Accordingly, defendant has not met his burden of establishing that the PSIR was, in fact, inaccurate, and that his sentence is invalid on that basis. MCR

6.508(D)(3)(b)(iv). Further, defendant has waived review of this issue. At sentencing, defendant and defense counsel did not object to the information contained in the PSIR. The Court of Appeals has held that the plain language of MCL 771.14(6) and MCR 6.425(E)(2)(b) requires a defendant to challenge the accuracy of any information contained in the PSIR at the time of sentencing. *People v Sharp,* 192 Mich App 501, 504; 481 NW2d 773 (1992). In *Sharp,* the Court of Appeals specifically refused to allow postsentencing preservation of issues concerning the accuracy of presentencing information in light of the cited statute and court rule. *Id.* Accordingly, defendant's failure to challenge the accuracy of the information contained in the PSIR during sentencing precludes review here. *Id.*

(ECF #8-18 at Pg. ID 773-74.)

Alexander has failed to establish that the state trial court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. Nor did it rest on an unreasonable determination of the facts. Alexander has not made any showing, either to the trial court to this Court, that his pre-sentence report contained any inaccurate information or that the trial court relied upon materially false or inaccurate information when it sentenced him. Nor has he explained how any additional time to review the report would have changed the sentence he ultimately received. Alexander's speculative and conclusory allegations do not entitle him to federal habeas relief on this claim. *See*, *e.g.*, *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003).

**B**

Alexander next maintains that he is entitled to federal habeas relief because he did not have sufficient notice of, and the ability to challenge, his fourth habitual offender sentencing enhancement. The state trial court reviewed this claim and rejected it:

> Defendant next argues that he was denied due process and is entitled to resentencing because he was denied his right to challenge the habitual offender charge as outlined in MCL 769.13(4).
>
> Pursuant to MCR 769.13(4), "[a] defendant who has been given notice that the prosecuting attorney will seek to enhance his or her sentence as provided under section 10, 11, or 12 of this chapter, may challenge the accuracy or constitutional validity of 1 or more of the prior convictions listed in the notice by filing a written motion with the court and by serving a copy of the motion upon the prosecuting attorney in accordance with the rules of the supreme court." As defendant states, his attorney received written notice of the sentencing enhancement as mandated by MCL 769.13(1) and (2).
>
> It is unclear from defendant's argument here why he believes he was not given the right under MCL 769.13(4) to challenge the habitual offender enhancement. More importantly, defendant fails to bring forth evidence which would establish that he was not subject to a sentence enhancement as a fourth habitual offender. Accordingly, the Court will not grant relief from judgment on this issue.

(ECF #8-18 at Pg. ID 774-75.)

Alexander has failed to establish that the state trial court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. First,

to the extent that Alexander argues that he failed to receive adequate notice of the habitual offender enhancement under Michigan law, this is a state-law claim that is not cognizable on federal habeas review. *See, e.g.*, *Estelle*, 502 U.S. at 67-68. Second, to the extent Alexander claims that the state trial court violated his constitutional rights, he has not identified any Supreme Court case that recognizes such a violation under these circumstances. Moreover, the record in this case shows that the prosecutor filed a fourth habitual offender notice with the arrest warrant and that Alexander had the opportunity to challenge his sentencing enhancement during the proceedings before the state trial court. For all of these reasons, Alexander has not shown that he is entitled to federal habeas relief on this claim.

## C

Alexander next claims that he is entitled to federal habeas relief because his trial counsel was ineffective for failing to investigate a Friend of the Court warrant, for failing to object to the pre-sentence information report, for failing to object to the habitual offender enhancement notice, and for stipulating to Alexander's prior convictions at the preliminary examination without Alexander's permission. The state trial court considered these claims and rejected them:

> First, defendant argues that counsel was ineffective for failing to investigate a faulty warrant served on defendant by the Friend of the Court. He asserts that he was kept in the Wayne County Jail pending trial as a result of the faulty warrant. Even if counsel had failed to investigate the warrant as alleged by defendant, he has failed to address

how this affected the outcome of the proceedings in this case. That is, defendant has failed to establish that but for his attorney's failure to investigate the warrant, a different outcome reasonably would have resulted. *Id.*

Next, defendant argues that counsel was ineffective for failing to object to inaccurate information in the PSIR, including the information that led to him being sentenced as a fourth habitual offender. As noted above, defendant has failed to establish that there, in fact, any inaccurate information contained in the PSIR. Accordingly, defendant has not shown that counsel was ineffective on this basis.

Finally, defendant argues that counsel was ineffective for agreeing to a stipulation at the preliminary examination without defendant's permission. Defendant fails to identify the stipulation defense counsel agreed to without his permission, or explain how counsel's stipulation deprived him of a fair trial. Therefore, the Court will deny the motion for relief from judgment on this issue.

(ECF #8-18 at Pg. ID 775-76.)

Alexander has failed to establish that the state trial court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. Nor did it rest on an unreasonable determination of the facts. Federal claims of ineffective assistance of counsel are subject to the deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *See id.* at 687. To meet the first prong, a petitioner must establish that his attorney's

representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 689. The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Here, Alexander has not shown that he suffered prejudice under *Strickland*. As discussed above, he has failed to identify any incorrect information contained within the pre-sentence investigative report, and he has therefore not shown how he was prejudiced by his counsel's failure to object to that report. Likewise, because Alexander has failed to show a violation with respect to the habitual offender notice, he cannot show that he was prejudiced by his counsel's failure to object to the notice. Indeed, counsel is not ineffective for failing to make a futile or meritless objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Finally, Alexander has not shown how

the outcome of his trial or sentencing would have changed if not for his counsel's alleged failure to investigate the Friend of the Court warrant or his counsel's stipulation at the pretrial examination. Alexander has therefore not established the entitlement to federal habeas relief on this claim.

## D

Alexander next claims that he is entitled to federal habeas relief because his appellate counsel was ineffective for failing to raise the issues raised in Alexander's first motion for relief from judgment on direct appeal and for failing to object to the prosecution's late brief on direct appeal. The state trial court reviewed these claims and rejected them:

> With regard to the issues raised above, this Court has found that defendant's arguments are meritless. Accordingly, appellate counsel could not be deemed ineffective for failing to raise these arguments because counsel is not required to raise meritless arguments. *People v Riley (After Remand)*, 468 Mich 135, 142; 659 NW2d 611 (2003).
>
> Defendant also contends that appellate counsel was ineffective for failing to timely move to strike the prosecution's brief on appeal because it was untimely filed. However, even if appellate counsel failed to challenge an untimely response by the prosecution in this case, Defendant has not established that the failure prejudiced his appeal. Defendant is therefore not entitled to relief from judgment based on his ineffective assistance of appellate counsel claim.

(ECF #8-18 at Pg. ID 776-77.)

Alexander has failed to establish that the state trial court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. First, as the Court has held herein, the claims Alexander raised in his first motion for relief from judgment lacked merit. And appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Second, Alexander has failed to allege or establish that he was prejudiced by his appellate counsel's failure to object to the prosecution's late brief on appeal or that appellate counsel's conduct affected the outcome of the proceedings. As noted, conclusory allegations are insufficient to justify federal habeas relief. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442. Alexander has therefore failed to establish that he is entitled to federal habeas relief on this claim.

## E

Alexander next asserts that he is entitled to federal habeas relief because the prosecutor engaged in misconduct when the prosecutor issued a faulty Friend of the Court warrant that resulted in the trial court denying Alexander pre-trial release on bail. The state trial court reviewed this claim and rejected it:

> Defendant argues that the prosecutor committed misconduct when he issued a warrant for failure to pay child support when there was no pending child support case against defendant. First, defendant has failed to establish that the prosecutor issued a such [sic] a warrant or that he was held in the jail pending trial because of the

> warrant. Further, even if defendant was held in the Wayne County Jail because of the improper allegation that he failed to pay child support, defendant has not shown that he was denied a fair and impartial trial as a result.

(ECF #8-18 at Pg. ID 777.)

Alexander has failed to establish that the state trial court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. Alexander has not presented any evidence to support his claim that the prosecutor, in fact, issued an improper Friend of the Court warrant – and the record before this Court reveals no such warrant. As discussed, conclusory allegations are insufficient to justify federal habeas relief. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442. Moreover, even if a Friend of the Court warrant was erroneously issued, Alexander's conclusory assertion that being held in jail pending trial precluded him from securing unidentified defense witnesses is insufficient to establish the required prejudice. Alexander has therefore not shown that he is entitled to federal habeas relief on this claim.

## F

Alexander next maintains that he is entitled to federal habeas relief because his convictions for second-degree fleeing and eluding and resisting and obstructing a police officer violated double jeopardy principles. The state trial court reviewed this claim and rejected it:

> The double jeopardy clauses of the United States and Michigan Constitutions protect a defendant from multiple punishments for the same offense. *People v Heron,* 464 Mich 593, 599; 628 NW2d 10 (2001). In this case, defendant fails to present, and the Court is unaware of, any legal argument which would establish that convictions for both fleeing and eluding and obstruction of justice violate double jeopardy protections. The Court will therefore deny the motion for relief from judgment on this issue.

(ECF #8-18 at Pg. ID 778.)

Alexander has failed to establish that the state trial court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V. The Double Jeopardy Clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).

In the context of multiple punishments, however, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are

33

'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

Here, the Michigan Legislature has expressed an intent for multiple punishments for the two offenses at issue. The fleeing and eluding statute provides that "conviction under this section does not prohibit a conviction and sentence under any other applicable provision, except section 479a(2), (3), (4), or (5) of the Michigan penal code, 1931 PA 328, MCL 750.479a, for conduct arising out of the same transaction." Mich. Comp. Laws § 257.602a(6). And the resisting and obstructing statute provides that the section "does not prohibit an individual from being charged with, convicted of, or punished for any other violation of law that is committed by that individual while violating this section." Mich. Comp. Laws § 750.81d(5). In addition, the Michigan Court of Appeals has held that a defendant may be convicted of fleeing and eluding (albeit under Mich. Comp. Laws §

750.479a) and resisting and obstructing a police officer without violating double jeopardy principles. *See People v. Coronado*, 2012 WL 470188, at *3 n. 2 (Mich. Ct. App. Feb. 14, 2012); *People v. Briggs*, 2010 WL 5373873, at *7-8 (Mich. Ct. App. Dec. 28, 2010). Given such state law authorizing multiple punishments under the relevant statutes, it cannot be said the state trial court unreasonably concluded that Alexander's convictions for second-degree fleeing and eluding and resisting and obstructing a police officer did not violate double jeopardy principles. For all of these reasons, Alexander has not established that he is entitled to federal habeas relief on this claim.

## G

Next, Alexander says that he is entitled to federal habeas relief because the prosecutor abused his discretion and violated Alexander's rights under the Due Process Clause when the prosecutor cited Alexander for seriously injuring/impairing Officer Spangler as part of the second-degree fleeing and eluding charge. The state trial court reviewed this claim in the context of a motion to dismiss Alexander had filed and rejected it:

> Finally, in defendant's motion to dismiss, he argues that the prosecutor abused his discretion in charging him with fleeing and eluding and obstruction of justice because the indictment was defective.

> Michigan law provides that criminal prosecutions may be initiated in the court having jurisdiction to hear the cause by either indictment or information. MCL 767.1 et seq. In

> this case, the prosecution charged defendant by filing an
> information. Because there was no indictment issued in
> this case, defendant's contention that the indictment was
> defective is without merit.

(ECF #8-18 at Pg. ID 778.)

Alexander has failed to establish that the state trial court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. Simply put, Alexander's claim is belied by the record. He was charged with second-degree fleeing and eluding based upon his failure to pull over his vehicle in response to the officer's lights and siren and his prior fleeing and eluding convictions. The prosecutor never charged Alexander with seriously injuring or impairing Officer Spangler. Alexander has therefore failed to establish that the prosecutor violated his (Alexander's) constitutional rights with respect to the charging decision. Alexander is therefore not entitled to federal habeas relief on this claim.

## VI

### A

Finally, the Court turns to the claims Alexander raised in his second motion for relief from judgment that he filed with the state trial court. As with the claims Alexander raised in his first motion for relief from judgment, Respondent argues that the Court should not consider these claims because they are procedurally defaulted. However, because the underlying merits of Alexander's claims are easily resolved,

the Court will consider them. *See* 28 U.S.C. § 2254(b)(2); *Hudson*, 351 F.3d at 216 (6th Cir. 2003).

## B

Alexander asserts that he is entitled to federal habeas relief because the state sentencing court violated his Sixth Amendment rights by engaging in judicial fact-finding when it determined his sentencing guidelines range. (*See* ECF #11 at Pg. ID 979.) This claim rests in large part upon the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013).[4] In *Alleyne*, the Supreme Court held that judicial fact-finding "that increases the mandatory minimum sentence for a crime" is impermissible under the Sixth Amendment. *Alleyne*, 570 U.S. at 103. Thus, the Supreme Court concluded that "any fact that increases the mandatory minimum is an 'element' of the offense that must be submitted to the jury and proven beyond a reasonable doubt." *Id.*

And just recently, the United States Court of Appeals for the Sixth Circuit, applying *Alleyne*, held that "Michigan's sentencing regime" in place at the time of

---

[4] Alexander's Sixth Amendment claim relies upon the Michigan Supreme Court's decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). (*See* ECF #11 at Pg. ID 979.) As explained in Section I above, the Michigan Supreme Court in *Lockridge* held that "[a] straightforward application of the language and holding in *Alleyne* leads to the conclusion that Michigan's sentencing guidelines scheme violates the Sixth Amendment." *Lockridge*, 870 N.W.2d at 513-14. Thus, because *Lockridge* applies *Alleyne*, Alexander's Sixth Amendment claim here is best described as an *Alleyne* claim.

Alexander's sentencing was "unconstitutional." *Robinson v. Woods*, ___ F.3d ___, 2018 WL 4039838, at *4 (6th Cir. Aug. 24, 2018). Under that "regime," sentencing judges found facts that were then used to calculate a defendant's sentencing guidelines range, and the range set what was effectively a mandatory minimum sentence. *Id.* at **4-6. This sentencing process "violated *Alleyne's* prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson*, 2018 WL 4039838, at *4.[5] *Robinson* makes clear that to the extent that the state sentencing court determined Alexander's sentencing guidelines range based on facts that were not found by the jury, Alexander's sentence violated the Sixth Amendment.

But Alexander is not entitled to habeas relief because any Sixth Amendment error committed by the sentencing court in determining his guidelines range was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas

---

[5] Alexander may invoke *Alleyne* because it was decided on June 17, 2013, while Alexander's direct appeal was still pending in the Michigan appellate courts. *See Robinson,* 2018 WL 4039838, at *3 (explaining that a Supreme Court decision applies to criminal cases pending on direct appeal at the time the decision is issued).

cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). Importantly, the Supreme Court has held that the "[f]ailure to submit a sentencing factor to the jury … is not a structural error" and is therefore subject to harmless-error review. *Washington v. Receunco*, 548 U.S. 212, 222 (2006).

Any judicial fact finding by the sentencing court in determining Alexander's guidelines rage was a harmless error because the guidelines played no meaningful role in the court's ultimate sentencing decision. Indeed, the court imposed the maximum sentence allowed by law – life in prison. That sentence far exceeded the top end of the guidelines range which called for Alexander to receive a minimum 29 months to 114 months sentence. (*See* Sentencing Tr., ECF #8-13 at Pg. ID 465.) Critically, the sentencing transcript demonstrates beyond a shadow of a doubt that the sentence was driven by Alexander's lengthy criminal history, not the court's guidelines calculation:

> In this particular case, the defendant [….]was on probation and/or parole at the time that he is alleged to have committed this offense. In fact, he was 12-year to 20-year max on a case out of 1991 for parole when this case -- 12-year minimum to 20-year maximum. He was on parole for also two to five out of Wayne County. He was also on parole for one to five out of Wayne County and on probation for three years out of another case from Wayne County at the time that he was convicted in this particular case. So he does not receive any credit. But the body of the report should reflect the sentencing date was today's date and that he's been in custody 217 days.

In this particular case, although obviously under, you know, for murder cases and for Class A offenses the state has either mandatory life or prison or Class A, it's parolable life offenses, the legislature also envisioned for Habitual 4th offenders, Habitual 4th, not the Habitual 13th that we have before the Court here today but for Habitual 4th's, that the -- that life, parolable life is an appropriate sentence under the facts and circumstances.

And the facts and circumstances go all the way back to 1978 when he was charged with Criminal Sexual Conduct in the First Degree and it was pled down to Assault and Battery. But the facts and circumstances indicate -- and he was sentenced to probation and sent to Maxey Juvenile Facility for that offense. But the facts and circumstances indicated in that 1978 case the defendant was involved in oral sex with a five-year-old on school playground.

Then we have 1985 where he was convicted of Attempt UDAA, sentenced to six months to two-and-a-half years in prison. His probation – he violated that probation and then was sent back and his parole was extended in that 1985 case. That was April of 85.

July of 85, B & E Building With Intent. He was given probation in that case.

June 2nd, 1987, Unlawfully Driving Away, given probation. Because of a violation of probation in that case, probation was closed in the 1987 case in 2000, 13 years later. The defendant has been -- he was in and out of prison over -- from 1987 to 2000, and the case was ultimately closed at that time.

Again, July -- another case, attempt UDAA, given 90 days in the Wayne County Jail.

19 -- September of 87, Receiving and Concealing Over 100, which was a felony, he received two to ten. He was

paroled, but he got a new commitment and the -- on that 87 case and he had a parole violation with a new sentence as a result of a subsequent case.

In 1991 he had another stolen car, Fleeing and Eluding, Habitual 4th.

*The defendant reached Habitual 4 status in 1991, 20 years ago, yet has continued his nefarious career as a habitual offender for another 20 years.*

And as far as that 1991 case, the defendant was paroled on June 3rd and -- of 2003 and on, what was it, one month, so 30 -- on July 12th he violated his parole after being placed on parole on June 3rd, *so it lasted a grand total of 39 days out of prison before he picked up a new offense*, which, on July 12th, was another Receiving and Concealing, two counts, that he violated parole and received an additional one to five in the Michigan Department of Corrections.

That skips the April 24th, 1991 where he received three to five years in the Michigan Department of Corrections for a Receiving and Concealing Stolen Property, Fleeing a Police Officer as well, which I've not done there.

And then the 19 -- the 2003 case, the defendant*, in addition to being out on parole for a whopping 39 days before he picked up his next felony*, also tried to use an alias of Anthony Meyers in order to elude law enforcement. So then he's back in prison. He was paroled March 28th, 2007.

He picked up another Receiving and Concealing Stolen Property, receives yet another one to five in the Michigan Department of Corrections. The defendant was paroled on December 2nd, 2008.

And then on December or October 2nd, 2009, 10 months later, so he -- *we're a little bit better than the whopping 39 days before, we make it ten months this time before --*

while on parole supervision before he picks up his next felony.

He was reinstated on parole because on October 2nd, 2009 he picked up a new B & E Motor Vehicle, which he received one year in jail, three years probation. And that's what we have.

Now, in this particular case he does – if I -- my math is correct, he was sentenced November 11th, 2009 to three years probation with one year Wayne -- or, I'm sorry, November 30th, 2009 to one year in jail. That would take us to – three years probation, one year in jail. That would take us to approximately November 30th of 2010.

And lo and behold, on January 19th, 2011, a gap of approximately two months, we have another Fleeing and Eluding, Receiving and Concealing Stolen Property, not just Habitual 4th but Habitual 13th at this particular juncture.

(*Id.* at Pg. ID 460-64; emphasis added.) After reciting this long criminal history, the sentencing court concluded that "if there was any candidate who the [Michigan] [L]egislature envisioned out to receive parolable life under the Habitual 4th statute, it would be Mr. Alexander." (*Id.* at Pg. ID 464.) Given the court's decision to impose the statutory maximum punishment that far exceeded the top of the guidelines range, and, just as importantly, its reasoning for that sentence, any alleged Sixth Amendment error with respect to the guidelines was harmless. *See United States v. Brown*, 444 F.3d 519, 522 (6th Cir. 2006) (holding that even though trial court erred when it, among other things, "made forbidden findings of fact" when determining petitioner's sentence, errors were harmless because "any possible harm from these

errors was nullified when the court later exercised its discretion to grant a substantial upward departure that increased the sentence considerably above the Guideline recommended range"). Alexander has therefore not shown that he is entitled to federal habeas relief on this claim.

## VII

For the reasons stated above, the Court concludes that Alexander is not entitled to federal habeas relief on any of his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** his petition for a writ of habeas corpus (ECF #1).

Before Alexander may appeal the Court's decision, the Court must issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, jurists of reason would not debate the Court's conclusion that Alexander has failed to demonstrate entitlement to habeas relief with respect to any of his claims because they are all devoid of merit. Therefore, the Court will **DENY** Alexander a certificate of appealability.

Finally, although this Court declines to issue Alexander a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Alexander's claims, an appeal could be taken in good faith. Accordingly, the Court **GRANTS** Alexander permission to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 27, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 27, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda

Case Manager

(810) 341-9763